IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

HEATH J. [1]

          Plaintiff,                                Civ. No. 6:22-cv-00577-AN

    v.                                      **OPINION AND ORDER**

**COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,**

          Defendant.

_____

        Plaintiff Heath J. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying his claim for supplemental security income benefits. For the reasons provided below, the Commissioner's decision is AFFIRMED.

## BACKGROUND

        Plaintiff is a 55-year-old man who alleges he is unable to work due to mental and physical impairments. Plaintiff filed an application for Supplemental Security Income benefits with a protective filing date of April 16, 2018. Tr. 330; *see* Tr. 14. In his application, Plaintiff claimed disability with an alleged onset date of September 10, 2017. *Id.* Plaintiff then amended the date he claims he became disabled to April 16, 2018. Tr. 362; *see* Tr. 14. The claim was denied initially on April 23, 2019 and upon reconsideration on October 22, 2019. Tr. 159, 167. A telephonic hearing was held on February 10, 2021, before Administrative Law Judge Mark Triplett due to the Coronavirus Pandemic. Tr. 53-92. On April 1, 2021, the ALJ issued an

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case.

unfavorable decision, finding Plaintiff was not disabled from the alleged onset date, as amended, through the date of decision. Tr. 14-33. On February 18, 2022, the Appeals Council denied review, making the ALJ's decision the final agency decision. Tr. 1. This action followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r. Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.    Is the claimant performing "substantial gainful activity"? 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.    Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.    Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so,

then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds to the "residual functional capacity" ("RFC") assessment.

    a.   The ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's RFC. This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled.

*See also Bustamante v. Massanari*, 262 F.3d 949, 954-55 (9th Cir. 2001).

        The claimant bears the burden of proof at steps one through four. *Id.* at 954. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (internal citations omitted); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 954-55;

*Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

Applying the above analysis, the ALJ made the following findings:

1. Plaintiff has not engaged in substantial gainful activity since April 16, 2018, the application date. Tr. 16.

2. Plaintiff has the following severe impairments: right knee degenerative joint disease; lumbar degenerative disc disease status post-surgery; carpel tunnel syndrome (CTS) status post carpal tunnel release; and inflammatory arthritis; tinnitus; obesity; depression and somatic symptom disorder. Tr. 17.

3. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Tr. 17.

4. Plaintiff has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can never climb ladders, ropes or scaffolds, but he can occasionally climb ramps and stairs, stoop, kneel, crouch and crawl and frequently balance. He can frequently, but not constantly, handle and feel bilaterally. He can tolerate no exposure to workplace hazards such as unprotected heights and exposed, moving machinery. He can perform simple, routine tasks and make simple work-related decisions. He can tolerate occasional changes to work routine and work processes, but he cannot engage in assembly line work, or work that involves timed production quotas. Tr. 19.

5. Plaintiff is unable to perform any past relevant work. Tr. 31.

6. Plaintiff was born on December 13, 1967, and was 50 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed. Tr. 31.

7. Plaintiff has at least a high school education. Tr. 31.

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. Tr. 31.

9. Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including Routing Clerk, Housekeeping Cleaner, and Marker. Tr. 32.

10. Plaintiff was not under a disability, as defined in the Social Security Act, since April
16, 2018, the date the application was filed.  Tr. 33.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the

proper legal standards and the legal findings are supported by substantial evidence in the record.

42 U.S.C. § 405(g);  *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004);

*see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).  "'Substantial evidence' means

'more than a mere scintilla but less than a preponderance,' or more clearly stated, 'such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Bray v.*

*Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53

F.3d 1035, 1039 (9th Cir. 1995)).  In reviewing the Commissioner's alleged errors, this Court

must weigh "both the evidence that supports and detracts from the [Commissioner's]

conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).  Variable interpretations

of the evidence are insignificant if the Commissioner's interpretation is rational.  *Burch v.*

*Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

If the decision of the Appeals Council is the final decision of the Commissioner,

this Court must review the decision of the Appeals Council to determine whether that decision is

supported by substantial evidence.  *Howard v. Heckler*, 782 F.2d 1484 (9th Cir. 1986).  Where

the evidence before the ALJ or Appeals Council is subject to more than one rational

interpretation, the Commissioner's conclusion must be upheld.  *Batson*, 359 F.3d at 1198 (citing

*Andrews*, 53 F.3d at 1041).  "However, a reviewing court must consider the entire record as a

whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'"

*Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock*, 879 F.2d at

501).  Additionally, a reviewing court "cannot affirm the [Commissioner's] decision on a ground that the [Administration] did not invoke in making its decision."  *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citations omitted).  Finally, a court may not reverse the Commissioner's decision on account of an error that is harmless.  *Id.* at 1055-56.  "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."  *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision."  *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968).  Under sentence four of 42 U.S.C. § 405(g), the reviewing court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

## DISCUSSION

Plaintiff presents the following issues for review:

1. Whether the ALJ properly considered Plaintiff's own testimony,
2. Whether the ALJ properly evaluated the medical opinion of Dr. Thomas Brent Shields, Ph.D.

For the following reasons, the Court finds that the ALJ did not err. The decision of the Commissioner is affirmed.

### I.    The ALJ properly considered Plaintiff's subjective symptom testimony.

Plaintiff challenges the ALJ's treatment of Plaintiff's subjective testimony.  Pl.'s Br. #14 at 8.  Plaintiff argues that the reasons the ALJ relied upon to reject Plaintiff's allegations were not clear and convincing because they were not supported by substantial evidence.  *Id* at 9. To assess a plaintiff's credibility, the Ninth Circuit is clear that an ALJ must perform a two-stage

analysis. In the first stage, the plaintiff must produce objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptom. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The plaintiff is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. *Id*.

In the second stage of the analysis, the ALJ must consider the intensity, persistence, and limiting effects of the alleged symptoms based on the entire record. SSR 16-3p at *7-8. The ALJ will consider the "[l]ocation, duration, frequency, and intensity of pain or other symptoms reported by the claimant, any medical sources, and any non-medical sources." *Id*. The ALJ's decision must contain "specific reasons for the weight given to the individual's symptoms, be consistent with and support by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id*. Additionally, the evidence upon which the ALJ relies must be substantial. *See Holohan v. Massinari*, 246 F.3d 1195, 1208 (9th Cir. 2001). In rejecting plaintiff's testimony about the severity of their symptoms, the ALJ must give "specific, clear and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015).

Plaintiff argues the ALJ is bound to the clear and convincing standard used for rejecting a plaintiff's subjective testimony, however, "the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking[.]" *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a). If the ALJ's findings are supported by substantial evidence in the record, [the reviewing court] may not engage in second-guessing. *See Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999), *Fair v. Bowen*, 885 F.2d 597 (9th Cir. 1989).

The ALJ reasonably concluded that the evidence in the record was inconsistent with Plaintiff's allegations regarding his limitations.  Plaintiff alleges that he cannot work due to back, knee, arm, and hand pain, as well as depression and anxiety.  Tr. 376.  The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the claimant's alleged symptoms."  Tr. 21.  However, the ALJ found that "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not consistent with the medical evidence and other evidence in the record . . ."  *Id.*  The ALJ pointed to specific evidence in the record, including treatment notes from Sky Lakes Medical in 2018-2019, an objective report from Dr. Michael Henderson, 2019 X-Ray results, treatment notes from Samaritan Health Services and Klamath Basin Behavioral Health, a psychological evaluation by Dr. Thomas Brent Shields, and a musculoskeletal examination by Dr. Mike Henderson.

## A.    The ALJ properly evaluated Plaintiff's subjective symptom testimony surrounding his limitations due to back, knee, arm and hand pain.

Specifically, the ALJ found evidence in the record that contradicted Plaintiff's claims of almost complete immobility due to pain in his low back, knees, arm and hand.  Tr. 375-406.  Reports from Dr. Catherine Ruth note that plaintiff was reluctant to disclose details about his pain, he had hyperalgesia[2] to light touch over is elbow and forearm, normal sensation in his fingers and 5/5 strength in his hand.  Tr. 482.  The ALJ also pointed to Dr. Ruth's notes that Plaintiff had no point tenderness over lumbar spine, but had "tenderness to palpitation over the bilateral paraspinal muscles, worse on the left side, and a straight leg raising test was positive at

---

[2] Hyperalgesia is a symptom where you feel pain in situations where feeling it is normal, but the pain is much more severe. It happens because of disruptions in your body's pain processes. This can happen commonly with burns and many other injuries and conditions. It's often treatable, with many possible treatment methods and approaches. Cleveland Clinic, *Hyperalgesia*, https://my.clevelandclinic.org/health/symptoms/23550-hyperalgesia (last visited August 21, 2023).

60 degrees on the left.  Range of motion was normal in his lower back, and his left leg sensation and strength were normal.  His gait was also normal.  He was prescribed Gabapentin and was referred to physical therapy." Tr. 21.  Plaintiff is correct that the ALJ cited to both "evidence that supports Plaintiff's allegations and evidence that detracts from it."  Pl.'s Br. #14 at 9.  However, the ALJ provided substantial evidence to support his conclusions about Plaintiff's impairments.  "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Trevizo*, 871 F.3d at 674-75 (citing *Orn v. Astrue*, 495 F.3d at 625, 630 (9th Cir. 2007)).

Dr. Henderson's[3] physical and neurological examinations both point to instances of Plaintiff's somatic symptom disorder[4].  Dr. Henderson's objective data from the physical examination states the "[e]xam was inconsistent and [plaintiff] had excessive pain behavior . . . The pain behavior throughout the exam [was] relatively theatrical and drawn out." Tr. 616.  The ALJ cites to this evidence, as well as pointing out plaintiff's ability to stand up from a sitting position without assistance or evidence of pain, as well as his tandem walking being good and his "reported diffuse tenderness of his back, but he was vague as to location." Tr. 21.  Dr. Henderson concluded this examination by stating that plaintiff's depression and anxiety is the main impairment, and that there were several inconsistencies of pain behavior and function for his back, right arm pain, and knees. Tr. 617.  "Right arm pain: The history is vague as to how it

---

[3] Dr. Henderson is an independent medical examiner who did not had previous contact with plaintiff.

[4] Somatic symptom disorder is diagnosed when a person has a significant focus on physical symptoms, such as pain, weakness or shortness of breath, to a level that results in major distress and/or problems functioning. The individual has excessive thoughts, feelings and behaviors relating to the physical symptoms.  The emphasis is on the extent to which the thoughts, feelings and behaviors related to the illness are excessive or out of proportion.  American Psychiatric Association, *What is Somatic Symptom Disorder?*, https://www.psychiatry.org/patients-families/somatic-symptom-disorder/what-is-somatic-symptom-disorder#:~:text=Somatic%20symptom%20disorder%20is%20diagnosed,relating%20to%20the%20physical%20symptoms (last visited August 21, 2023).

was injured and he talks about cubital tunnel and carpal tunnel, but anatomically this does not explain the reaction during the exam." *Id*.

The above medical opinion evidence, paired with the ALJ's half-page recitation of Dr. Henderson's 2019 neurological examination[5], and the ALJ's citation to Plaintiff's 2019 treatment notes from Sky Lakes Medical and Samaritan Health Services[6] is more than enough to satisfy the substantial evidentiary standard. Moreover, the inconsistency between Plaintiff's reports of debilitating pain and the objective medical findings is something the ALJ can take into consideration for their ruling. "[T]he ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct . . ." *Molina*, 674 F.3d at 1112, *Kendel S. v. Comm'r Soc. Sec. Admin.*, No. C20-5800-MAT, 2021 U.S. Dist. LEXIS 150250, at *21-22 (W.D. Wash. Aug. 10, 2021). The ALJ did not err in his analysis finding inconsistencies between Plaintiff's subjective symptom testimony and the objective record, and if there was any error, such error was harmless.

**B.    The ALJ properly evaluated Plaintiff's subjective symptom testimony surrounding his mental health limitations.**

Plaintiff argues the medical record supports his allegations of disabling limitations due to depression. Pl.'s Br. #14 at 11. Plaintiff also argues that the ALJ ignored treatment notes from mental health providers. *Id*. at 12. This is an incorrect assessment of the ALJ's opinion. The ALJ does cite to treatment notes from mental health providers (Dr. Thomas Brent Shields, Klamath Basin Behavioral Health and a mental health specialist at Samaritan). Tr. 24; *see* Tr.

---

[5] "The [Plaintiff] withdrew in pain around the medial epicondyle with light pushing of his right elbow, but no erythema, associated skin swelling or excess moisture consistent with reflex sympathetic dystrophy was present. Bilateral elbow flexion and extension was normal, with no difficulty with pronation or supination." Tr. 22, 621-23.

[6] "In February 2020, the claimant's gait was upright and stable. He had no visible tremors, and his grip strength was equal. His range of motion was normal, with no edema. X-rays of claimant's right hand showed mild osteoarthritic changes and an ulnar positive variant." Tr. 23, 894, 898-900 (internal citations omitted).

609-13, 642-44, 1234.  The ALJ concluded that "the objective medical evidence of record regarding [plaintiff's] mental symptoms also support that no more restrictive limitations are required." Tr. 25.  Specifically, the ALJ pointed to several different mental status examinations where plaintiff's affect is cooperative, pleasant, awake, alert, active and fully oriented, with appropriate appearance and eye contact, and normal psychomotor activity, behavior, mood affect, speech, perception, thought process and thought content.  *Id*.

        Plaintiff is correct that the ALJ did not mention Dr. Gardner's assessment of plaintiff's PHQ-9 score being rated as high as 24 (severe depression).  Tr. 1349.  However, plaintiff fails to acknowledge the four paragraphs where the ALJ discusses plaintiff's depression, stress and even his suicidal ideation.  *See* Tr. 24-5.  The ALJ did not ignore objective evidence of plaintiff's reported mental impairments.  An ALJ is tasked with resolving conflicts in medical testimony to make a finding.  *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020) (citing *Andrews*, 53 F.3d at 1039).  "Where the evidence can reasonably support either affirming or reversing a decision, we [the court] must not substitute our judgment for that of the ALJ." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) (internal quotation and brackets omitted).  The ALJ has supported his opinion regarding plaintiff's depression with substantial evidence, as noted above and elaborated upon earlier in his opinion.  *See* Tr. 18-19.  Specifically, the ALJ found that the "severity of [plaintiff's] mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04[7] and 12.06[8]." *Id*.  To support this finding, the ALJ utilized plaintiff's function report to note that "he has the mental capacity to complete such tasks as driving, attending to his personal hygiene, paying bills, grocery shopping and completing light household chores . . . The claimant has reported that he has problems

---

[7] 12.04 Depressive, bipolar and related disorders.
[8] 12.06 Anxiety and obsessive-compulsive disorders.

getting along with others.  However, he also reported he does spend time with others particularly with his family and his girlfriend, and he admits that he has never been fired or laid off from a job because of problems getting along with other people." *Id.* (internal citations omitted). Plaintiff argues the ALJ ignored plaintiff's qualifying explanations for those activities.  Pl.'s Br. #14 at 14.  However, the ALJ acknowledged plaintiff's qualifying explanation that he could only do light household chores, which the ALJ then accounted for in the RFC.  There are two ways activities of daily living (ADLs) may support a rejection of subjective symptom testimony: (1) the ADLs contravene the claimant's allegations of functional limitations; or (2) the ADLs "meet the threshold for transferrable work skills[.]" *Orn*, 495 F.3d at 639.  "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the [plaintiff's] testimony to the extent that they contradict claims of a totally disabling impairment." *Molina*, 674 F.3d at 1113.  Such is the case here.  Plaintiff alleges he is in bed 15 days of the month due to completely disabling symptoms from back, knee, arm and hand pain.  Tr. 78-9.  However, the ALJ found that plaintiff's aforementioned activities contradict claims of total disability, and the Court agrees.  "Some of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment."  Tr. 26.

   In conclusion, the ALJ reasonably found plaintiff's subjective testimony regarding the frequency and severity of his depression to be inconsistent with the medical evidence, and the ALJ's reasoning was specific, clear, and convincing.

## II. The ALJ properly evaluated and credited the medical opinions of Dr. Thomas Brent Shields, Ph.D.

   Under prior Social Security regulations, a hierarchy of medical opinions dictated the weight that must be given by an ALJ: treating doctors were generally given the most weight

and non-examining doctors were generally given the least weight. *See* 20 C.F.R. §§ 404.1527, 416.927 (1991); 56 Fed. Reg. 36,932 (Aug. 1, 1991). For applications filed on or after March 27, 2017, the new regulations eliminate the old hierarchy of medical opinions. 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (2017). Plaintiff filed an application for disability insurance benefits on April 16, 2018. Thus, the Commissioner's new regulations apply to the ALJ's assessment of this opinion. *See* 20 C.F.R. § 404.1520c; 82 Fed. Reg. 5844 (Jan. 18, 2017); see also 82 Fed. Reg. 15,132 (Mar. 27, 2017) (correcting technical errors).

The new rules no longer provide for any inherent weight: "We [the SSA] will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) including those from your medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The SSA "considers" various medical opinions for claims filed on or after March 27, 2017, and determines which medical opinions are most persuasive. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). In evaluating which opinions are most persuasive, the ALJ considers several factors. The two most important factors are supportability & consistency. *Id*. Secondary factors include the relationship with the claimant, specialization, and other factors. *Id*. at 404.1520c(c), 416.920c(c).

Plaintiff contends that the ALJ did not properly consider the factors of supportability and consistency in evaluating the opinions of Dr. Shields. Plaintiff is incorrect, and the ALJ did not commit harmful error. Regarding the aforementioned factors of supportability and consistency, the definitions are as follows:

> Supportability: the "more relevant the objective medical evidence and supporting explanations presented by a medical source," the more persuasive that medical opinion will be.

20 C.F.R. § 404.1520c(c)(1).

> Consistency: the "more consistent a medical opinion" is with "the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion" will be.

20 C.F.R. § 404.1520c(c)(2).

Plaintiff supports his argument by stating "[t]he ALJ cited to a number of mental status exam notes made by non-mental health professionals in the course of treatment for physical conditions to find that Dr. Shields' medical opinions was undermined by other evidence in the record." Pl.'s Br. #14 at 16-7. The Court agrees with the Commissioner that there are no regulations preventing an ALJ from considering opinions regarding plaintiff's mental health from non-mental health professionals. The Court has already discussed the new medical rules that an ALJ must follow in evaluating medical opinions, and will not do so again here. Ultimately, the ALJ is responsible for determining which medical opinions are most persuasive. 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

Here, the ALJ weighed evidence from Dr. Shields that both supported and detracted from plaintiff's claims. The ALJ found that his opinion was "mostly persuasive." Tr. 30. Plaintiff is correct that the ALJ cited to mental status exam notes entered during the course of treatment for his physical conditions. Pl.'s Br. #14 at 16. However, the occasion as to why those mental status exam notes were taken is immaterial to the ALJ's determination of plaintiff's mental health status. The ALJ is instructed and encouraged to view the entirety of the record.[9] What is more, the ALJ discussed both factors of supportability and consistency[10] as required, and

---

[9] The ALJ must consider the medical record as a whole, rather than isolating a "specific quantum" of evidence to support the ALJ's conclusion. *Gallant v. Heckler*, 753 F.2d 1450, 1455 (9th Cir. 1984); *see also Holohan v. Massanari*, 246 F.3d 1195, 1205-08 (9th Cir. 2001) (cherry-picking is improper).

[10] "It is supported by Dr. Shields' findings of slow, monotonous and occasionally slurred speech, depressed mood with blunted affect, withdrawn demeanor, distractibility and slow processing speed, and by his observation that the claimant was depressed, unmotivated and fatigued. In addition, Dr. Shield's opinion is consistent with other findings of distractibility, significant difficulty performing a serial seven exercise, circumstantial thought processes and the need for redirection." Tr. 30 (internal citations omitted).

cogently concluded that plaintiff would be able to perform simple, routine tasks as detailed in the RFC, despite his mental impairments. Tr. 30. Moreover, so long as the ALJ's findings represent a reasonable interpretation of the evidence, the Court must uphold them. "[I]f evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision[.]" *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1193 (9th Cir. 2004). The ALJ's analysis is supported by substantial evidence. The ALJ's decision is affirmed.

## ORDER

The ALJ did not err. The decision is AFFIRMED.

It is so ORDERED and DATED this 24th day of August, 2023.

_____
Adrienne Nelson
United States District Court Judge